UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------- X

WILMINGTON SAVINGS FUND SOCIETY, FSB, solely in its capacity as trustee of the First Preferred Ship Mortgage Notes due 2022 issued by Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC,

        Plaintiff,

        v.

ELETSON HOLDINGS INC., ELETSON FINANCE (US) LLC, and AGATHONISSOS FINANCE LLC,

        Defendants.

---------------------------------------------------------------------------- X

Case No.: 23-cv-00261

Plaintiff Wilmington Savings Fund Society, FSB, solely in its capacity as trustee and collateral agent for certain notes issued by the above-named Defendants ("Plaintiff" or the "Trustee"), by and through its undersigned counsel, brings this action against the above-named Defendants, and alleges as follows:

## NATURE OF THE ACTION

1. This is a breach of contract and indemnification action arising from the Defendants' failure to make required payments on certain notes (the "Notes") and to fulfill their indemnification obligations under the Indenture (as defined below). The Notes were issued by Defendants Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC (the "Issuers").

2. The Issuers issued the Notes under an indenture dated as of July 2, 2018 (the "Indenture") by and among the Issuers and the Trustee. A true and accurate copy of the Indenture is attached hereto as **Exhibit A**.

3. The Notes required the Issuers, among other things, to make regularly scheduled interest payments to holders of the Notes. They also required the Issuers to repay the principal and any unpaid and accrued interest on the maturity date of January 15, 2022 (the "Maturity Date").

4. The Issuers failed to make the required interest payment due on April 15, 2019, and each subsequent interest payment, each due on January 15, April 15, July 15, and October 15 of each calendar year up to and including the Maturity Date. They also failed to repay the principal and accrued interest on the Maturity Date and to fulfill their obligations to compensate and indemnify the Trustee as provided for under the Indenture. For those reasons and others, the Issuers have breached their obligations under the Notes and the Indenture.

5. Plaintiff therefore seeks monetary relief in the amount of all unpaid principal, and accrued and unpaid interest, and indemnification for all losses incurred under the Indenture and the Notes. As of the date of this complaint, the unpaid amounts total approximately $354,159,101.92.

## PARTIES

6. Plaintiff Wilmington Savings Fund Society, FSB, acting as trustee and collateral agent, is a federal savings bank duly organized and existing under the laws of the United States of America. Plaintiff has its home office and principal place of business in the state of Delaware.

7. Defendant Eletson Holdings Inc. ("Eletson Holdings") is a corporation organized under the laws of Liberia with its principal place of business in Greece. Upon information and belief, Eletson Holdings Inc. owns 100% of equity and membership interests in the co-issuers party to this action.

8. Defendant Eletson Finance (US) LLC is a Delaware limited liability company. Upon information and belief, Eletson Finance (US) LLC is a wholly owned subsidiary of Eletson Holdings Inc. and none of its members is a citizen of Delaware.

9. Defendant Agathonissos Finance LLC (or "Eletson MI") is a limited liability company organized under the laws of the Marshall Islands. Upon information and belief, Agathonissos Finance LLC is a wholly owned subsidiary of Eletson Holdings Inc. and none of its members is a citizen of Delaware.

10. The above-named entities are signatories and parties to the Indenture, dated as of July 2, 2018. Plaintiff Wilmington Savings Fund Society, FSB, serves as trustee and collateral agent. Defendants, Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC, are co-issuers under the Indenture. In addition, thirteen vessel-owning special purpose vehicles guaranteed the obligations of the Issuers under the Notes and the Indenture and are not named as Defendants (collectively, the "Guarantors").[1]

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2). This action is between a citizen of a state on the one hand and citizens of foreign states on the other. The amount in controversy exceeds $75,000. The Trustee seeks a money judgment of at least $354,159,101.92.

12. Venue is proper in this District because the Issuers have agreed under the Indenture that any action arising out of or related to the Indenture may be brought in any federal or state court located in the County of New York and have waived all objections related to venue therein. Section 13.11 of the Indenture provides:

> This Indenture, the Notes, the Guarantees and the Security Documents will be governed by and construed in accordance with the laws of the State of New York…. This Indenture and Security

---

[1] The Guarantors are Erikoussa SME, Alonissos SME, Agathonissos SME, Makronissos SME, Pelagos II SME, Angistri SME, Skopelos II SME, Megalonissos SME, Shinoussa Shipping Corporation, Sarakino Shipping Corporation, Venetiko Shipping Corporation, Skyros II Shipping Corporation and Sikinos II Shipping Corporation.

> Documents governed by New York law will provide that each of the Issuers and the Guarantors will irrevocably submit to the jurisdiction of any New York State or United States Federal court sitting in the County of New York over any suit, action or proceeding arising out of or relating to this Indenture, the Notes, the Guarantees or any Security Document. Each of the Issuers and the Guarantors will irrevocably waive, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding brought in such courts and any claim that any such suit, action or proceeding brought in such courts, has been brought in an inconvenient forum and any right to which it may be entitled on account of place of residence or domicile.  Each of the Issuers and the Guarantors will agree that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding on them and may be enforced in any court to the jurisdiction of which each of them is subject by a suit upon such judgment, provided, that service of process is effected upon the Issuers or the Guarantors in the manner specified in the following paragraph or as otherwise permitted by applicable law.

13. This Court has personal jurisdiction over the Defendants because they regularly conduct business throughout the United States, including in the state of New York.  In addition, the Defendants have irrevocably submitted to the jurisdiction of this Court under Section 13.11 of the Indenture.  Finally, the Issuers have consented under the Indenture to service of process at any business location that the Issuers and Guarantors maintain in the United States, including at the offices of Eletson Maritime, Inc., located in Stamford, Connecticut.

## FACTUAL ALLEGATIONS

### A. The Indenture and the Notes

14. On or about July 2, 2018, the Issuers and Guarantors entered into the Indenture with Plaintiff, acting as trustee and collateral agent.

15. Under the Indenture, Eletson Holdings Inc., Eletson Finance (US) LLC, and Eletson MI issued First Preferred Ship Mortgage Notes due January 15, 2022, in an aggregate principal amount of $314,068,360 (the "Notes").

16. As set forth in the Form of the Note attached to the Indenture, interest on the Notes accrued at specified rates and in a specified manner during three different time periods:

   a. Semiannually, in arrears, for the interest period from January 16, 2018 to July 15, 2018, at a rate of 12.00% per annum, in each case, payable on July 15, 2018 to holders of record on July 1, 2018, payable entirely by increasing the principal amount of the outstanding Notes or by issuing new Notes ("PIK Interest");

   b. Semiannually, in arrears, for the interest period from July 16, 2018 to January 15, 2019, at a rate of 9.625% per annum, payable in cash ("Cash Interest") to holders of record on January 1, 2019; and

   c. From and after January 16, 2019, quarterly, in arrears, at a rate per annum of (i) 9.625% for any interest payment date for which the Trailing TCE is less than $20,000 or (ii) 10.625% plus 1.00% for each integral multiple of $2,000 by which the Trailing TCE for such interest payment date exceeds $20,000 (up to a maximum of 14.625% per annum), payable on each January 15, April 15, July 15 and October 15 as Cash Interest to holders of record on the immediately preceding January 1, April 1, July 1 and October 1, respectively.

17. Accordingly, the first interest payment was due on July 15, 2018, consisting of PIK Interest for the interest period from January 16, 2018, to July 15, 2018. Interest payments for the period from July 16, 2018 to January 15, 2019 were due semi-annually in cash, with the first of such payments due on January 1, 2019. Thereafter, cash interest was due quarterly through the Maturity Date of January 15, 2022.

18. Additionally, under Section 4.01 of the Indenture, the Issuers agreed to pay interest on overdue principal, interest, and premium, if any, at the rate of 1% per year in excess of the then applicable interest rate. On the Maturity Date, all principal and other amounts owing under the Notes became immediately due and payable.

19. Each Guarantor guaranteed the Issuers' obligations under the Notes and the Indenture (individually, a "Guarantee"). Under Section 11.05(a)(1) of the Indenture, a Guarantee becomes automatically and unconditionally released and is of no further force and effect "upon

the voluntary sale or disposition . . . or conveyance, transfer or lease of the Capital Stock of a Guarantor following which such Guarantor is no longer a Restricted Subsidiary . . . ."

20. Finally, the Indenture specifies certain events of default (each, an "Event of Default"). Section 6.01 of the Indenture provides, in relevant part, that each of the following is an Event of Default:

> (a) default for 30 days in the payment when due of any interest or any Additional Amounts on any Note;
>
> (b) default in the payment of the principal of or premium, if any, on any Note at its Maturity (upon acceleration, optional or mandatory redemption, if any, required repurchase or otherwise);
>
> ….
>
> (e) failure to comply with any covenant or agreement of an Issuer or of any Restricted Subsidiary that is contained in this Indenture, the Notes, any Guarantee or any Security Document (other than specified in clause (a), (b), (c), or (d) above) and such failure continues for a period of 30 consecutive days or more after notice has been given to the Company by the Trustee or to the Company and a Responsible Officer of the Trustee by the Holders of at least 25% in aggregate principal amount of the Notes then outstanding specifying the default and demanding compliance;

21. In an Event of Default, the Indenture empowers the Trustee to pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Notes. The Trustee does not need to own any Notes to pursue such remedy, nor does the Trustee waive any remedies under the Indenture by reason of delay. *Id*. at § 6.03. Further, the Indenture specifically authorizes the Trustee to institute judicial proceedings in an Event of Default for the collection of unpaid sums against the Issuers and the Guarantors. *Id.* at § 6.08.

22. The Indenture permits the holders of a majority in aggregate principal amount of the outstanding Notes to direct the time, method, and place of conducting any proceeding for exercising any remedy available to the Trustee. *Id.* at § 6.05.

23. Further, the Issuers and Guarantors agreed to, jointly and severally, indemnify the Trustee and its agents, officers, and directors against all losses, liabilities and expenses incurred arising out of the Trustee's acceptance and administration of duties under the Indenture, including the costs and expenses of enforcing its remedies against the Issuers and the Guarantors (the "Indemnity"). *Id.* at § 7.07(b). The obligations under the Indemnity survive the satisfaction and termination of the Indenture. *Id.* at § 7.07(c). To secure the Issuers' and Guarantors' obligations under the Indemnity, the Indenture grants a lien in favor of the Trustee prior to the Notes on all money or property held or collected by the Trustee, except that held in trust to pay principal and interest on particular Notes. *Id.* at § 7.07(d).

### B. The Collateral

24. In connection with the issuance and sale of the Notes, the Issuers granted a first-lien interest in certain pledged collateral as security for all obligations and indebtedness owed by each Issuer to the Trustee and the holders of the Notes.

25. Specifically, the Issuers, the Trustee, and the officers of the companies being offered as pledged assets executed a Pledge Agreement, dated as of July 2, 2018. A true and accurate copy of the Pledge Agreement is attached hereto as **Exhibit B**.

26. Under the Pledge Agreement, the Issuers pledged the following assets as collateral under the Notes (collectively, the "Collateral"):

    a. All outstanding common shares or membership interests in Eletson Finance (US) LLC, Eletson MI, and the Guarantors (the "Pledged Equity");

    b. thirteen shipping vessels owned by the Guarantors (the "Mortgaged Vessels");

    c. the earnings arising from freights, hires and other earnings from the operation and use of or relating to each such Mortgaged Vessel;

    d. all other cash and various accounts of Eletson MI and the Guarantors; and

   e. all proceeds of any of the foregoing.

27. On or about July 2, 2018, the Issuers, the Trustee, and the Guarantors executed additional agreements and other documents evidencing the creation of a first-lien interest in the Collateral and the granting of such security interest to the holders of the Notes and to the Trustee (collectively, the "Security Documents").

### C. The Defendants' Default Under the Indenture

28. As set forth above, the Indenture and Notes required the Issuers to make an interest payment of approximately $12,172,111.86 to the holders of the Notes on January 15, 2019.

29. The Issuers failed to make the required interest payment on January 15, 2019. Under Section 6.01(a) of the Indenture, the Issuers' failure to make the January 15, 2019 interest payment constituted an Event of Default as of February 14, 2019.

### D. The January 2019 Forbearance Agreement

30. On or about January 25, 2019, the Issuers and Guarantors entered into a forbearance agreement (the "Forbearance Agreement") with an ad hoc group of holders of over 90% of the Notes (the "Ad Hoc Group").[2]

31. Under the Forbearance Agreement, the Ad Hoc Group agreed to forbear from pursuing any remedies available to them under the Indenture until the earlier of February 11, 2019, or the occurrence of an Event of Termination under the Forbearance Agreement.

32. Also under the Forbearance Agreement, the Issuers and Guarantors acknowledged that certain Events of Default under the Indenture had occurred, including the Issuers' failure to make the required interest payment on January 15, 2019.

---

[2] The Forbearance Agreement contains confidentiality provisions and is not filed at this time. All allegations related to the Forbearance Agreement herein are not subject to such provisions.

33. On the day it executed the Forbearance Agreement, Eletson Holdings issued a press release stating: "The Company is confident that it has sufficient liquidity in the near term to operate its business in the ordinary course while it works to implement its financial restructuring." A true and accurate copy of the press release is attached hereto as **Exhibit C**.

34. Notwithstanding Eletson Holdings' public statement, the Events of Default described in the Forbearance Agreement continued. The Forbearance Agreement terminated on February 11, 2019.

### E. The June 2019 Restructuring Support Agreement

35. On or about April 5, 2019, the Ad Hoc Group sent to the Trustee a Notice of Default, Direction to Exercise Remedies under the Indenture for the First Preferred Ship Mortgage Notes due 2022 and Security Documents, and Indemnification of the Trustee and Collateral Agent (the "First Direction Letter"). The First Direction Letter notified the Trustee that Events of Default had occurred under the Security Documents and the Indenture.[3]

36. The First Direction Letter notified the Trustee that the Issuers had failed to pay interest when due under the Notes on January 15, 2019, which under Section 6.1(a) of the Indenture constituted an event of Default as of February 14, 2019. The Ad Hoc Group directed the Trustee by the First Direction Letter to take certain actions consistent with the remedies available to the Trustee in an Event of Default under the Indenture, including formally notifying the Issuers and Guarantors of each Event of Default described in the First Direction Letter.

37. On or about April 8, 2019, the Trustee sent a Notice of Events of Default to the Issuers and Guarantors formally notifying them of the Events of Default contained in the First

---

[3] The First Direction Letter contains confidentiality provisions and is not filed at this time. All allegations related to the First Direction Letter herein are not subject to such provisions.

Direction Letter (the "Notice of Default"). A true and accurate copy of the Notice of Default is attached hereto as **Exhibit D**.

38. On or about June 24, 2019, the Issuers, the Guarantors, certain equity holders of Eletson Holdings, and the Ad Hoc Group entered into a Restructuring Support Agreement (the "RSA") setting forth the terms of a restructuring of, among other things, the Issuers' obligations under the Notes and the Indenture (the "Restructuring").[4]

39. The Restructuring contemplated that the parties would effectuate a series of transactions through a joint prepackaged chapter 11 plan, including the issuance of new notes, convertible notes, and new preferred stock of the Issuers in exchange for, among other things, the partial satisfaction of the existing Notes. The effectiveness of the RSA and the Restructuring transactions was conditioned on the Issuers meeting various milestones as set forth in Exhibit C to the RSA. In relevant part, those milestones included:

1. As soon as reasonably practicable, but in no event later than July 15, 2019, the Solicitation Materials shall be agreed in form and substance among the Company, the Consenting Common Equity Holders and the Consenting Noteholders;

2. On or before July 22, 2019, the Company shall commence a solicitation of the holders of Senior Notes seeking the acceptance of the Plan (the "Solicitation Commencement Date"); provided, that Holdings may seek an extension of the Solicitation Commencement Date by seven (7) days if the Parties agree that good faith progress is being made in the Company's negotiations with the Working Capital Facility Lenders (such consent to extension not to be unreasonably withheld by the Consenting Noteholders), and, if the Solicitation Commencement Date is so extended, Milestones 3, 4 and 5 shall each also be extended by seven (7) days;

…

4. The remaining Definitive Documents shall be agreed in form and substance among the Company, and with respect to Eletson MI, consistent with the Eletson MI Consent Right, the Consenting Common Equity Holders and the Consenting Noteholders on or before August 9, 2019;

---

[4] The RSA contains confidentiality provisions and is not filed at this time. All allegations related to the RSA herein are not subject to such provisions.

40. The RSA also contemplated the execution and delivery of a Strict Foreclosure Agreement by the Issuers, including Eletson MI (the "Strict Foreclosure Agreement"). The Issuers, the Guarantors, and the Trustee executed the Strict Foreclosure Agreement on or about June 24, 2019. A true and accurate copy of the Strict Foreclosure Agreement is attached hereto as **Exhibit E**.

41. Under the Strict Foreclosure Agreement, Eletson MI transferred all rights to and equity interests in the Guarantors to non-party New Agathonissos Finance LLC ("NewCo."), a Marshall Islands LLC beneficially owned by the holders of the Notes. The transfer of all equity interests in the Guarantors caused the automatic and unconditional release of each Guarantee under Section 11.05(a) of the Indenture.

42. The Strict Foreclosure Agreement provided that, if the Restructuring transactions contemplated by the RSA were not consummated on or before the earlier of (i) December 24, 2019 or (ii) the termination of the RSA, so long as the Strict Foreclosure remained in full force and effect, the obligations owed to the Trustee and to the holders of the Notes would be deemed partially satisfied in the amount of $130 million in exchange for the acceptance by the holders of the foreclosed interests in the Guarantors.

43. On or about August 9, 2019, the Ad Hoc Group sent to Eletson Holdings a Notice of Termination of the Restructuring Support Agreement ("Notice of Termination"). The Notice of Termination informed Eletson Holdings that, under Section 6 (a)(iii) of the RSA, a termination event had occurred due to the failure of Eletson Holdings to meet Milestones 1, 2, and 4 in the RSA. The Notice of Termination released the Ad Hoc Group and all other consenting holders of notes from all commitments, undertakings, and agreements related to the RSA. A true and accurate copy of the Notice of Termination is attached hereto as **Exhibit F**.

44. At the direction of the Ad Hoc Group, the Trustee delivered a Consent Solicitation Statement to the holders of the Notes on or about October 16, 2019 (the "Consent Solicitation Statement"). The Consent Solicitation Statement solicited the consent of the holders of the Notes to amend the Indenture in certain respects and to direct the Trustee to release all liens on the Collateral securing the Notes. After receiving the consent of holders representing two-thirds of the outstanding principal amount of the Notes, the Issuers and the Trustee executed a Supplemental Indenture on or about October 24, 2019 (the "Supplemental Indenture"). True and accurate copies of the Consent Solicitation Statement and the Supplemental Indenture are attached hereto as **Exhibit G** and **Exhibit H**, respectively.

45. On or about October 24, 2019, the Trustee effected the release of all the liens on the Collateral securing the Notes.

### F. The Issuers' Continuing Default Under the Indenture

46. Since the delivery of the Notice of Termination, the Issuers have failed to make any required payments of interest and principal on the Notes.

47. On January 15, 2022, the Maturity Date of the Notes occurred, and all outstanding principal and unpaid interest became immediately due and payable. The Issuers failed to pay the principal and interest when due.

48. As of the date of this filing, approximately $202,912,461.00 in principal of the Notes remains outstanding. In addition, approximately $151,246,640.92 in interest has accrued on the Notes and remains unpaid. In total, the outstanding principal and interest on the Notes as of the date hereof is approximately $354,159,101.92.

49. On or about January 10, 2023, holders of a majority in aggregate principal amount of the then-outstanding Notes delivered a letter to the Trustee directing the Trustee to take certain actions consistent with the remedies available to the Trustee to collect overdue principal and

interest and certain indemnified losses (the "Second Direction Letter"). The Second Direction Letter, *inter alia*, directed the Trustee to retain undersigned counsel and prepare a complaint to be filed in this District for breach of contract due to nonpayment of interest and principal and certain indemnified losses. The Trustee accepted the directions given under the Second Direction Letter.

## COUNT I

### Breach of Contract - Nonpayment of Interest and Principal

50. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

51. The Issuers' obligations for the payment of principal and interest on the Notes are due and outstanding under the terms of the Note and of the Indenture.

52. On or about April 8, 2019, the Trustee notified the Issuers that they had failed to pay interest when due under the Notes on January 15, 2019, which constituted an event of Default as of February 14, 2019, pursuant to Section 6.1(a) of the Indenture.

53. Despite this notice, the Issuers have failed to make any payments of interest on the Notes to the Plaintiff or to the holders of the Notes.

54. On January 15, 2022, the Notes matured, and all outstanding principal and unpaid interest became immediately due and payable.

55. The Issuers have failed to make any payment of principal or interest under the Notes since the Maturity Date.

56. By reason of the foregoing, the Issuers have breached their contractual obligations to the Plaintiff and to the holders of the Notes, and the Issuers are liable to the Plaintiff and to the holders of the Notes for unpaid principal and interest in the approximate amount of $354,159,101.92.

## COUNT II:

### Breach Of Contract - Indemnified Losses and Expenses

57. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

58. Under Section 7.07 of the Indenture, the Issuers agreed to, jointly and severally, indemnify the Trustee, its agents, officers, and directors for all expenses and losses incurred in connection with the acceptance and administration of its duties under the Indenture, including the enforcement of remedies against the Issuers.

59. The Trustee has heretofore incurred expenses and losses, including attorney's fees, and continues to accrue expenses and losses in connection with the acceptance and administration of its duties under the Indenture.

60. By reason of the foregoing, the Issuers are liable, jointly and severally, to the Trustee for all losses, costs, charges, fees, and expenses incurred and that will be incurred by the Trustee in the administration of its duties under the Indenture, for a sum to be determined together with interest thereon.

### REQUEST FOR RELIEF

61. WHEREFORE, Plaintiff demands judgment against the Issuers as follows:

   i. On the First Cause of Action, awarding Plaintiff damages against the Issuers in the amount of not less than $354,159,101.92;

   ii. On the Second Cause of Action, awarding Plaintiff damages for expenses and losses incurred and such additional amounts not yet determined with interest thereon;

   iii. Awarding Plaintiff such equitable and injunctive relief as may be necessary to prevent the dissipation of the Issuers' assets;

    iv.    Awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated:    New York, New York
January 11, 2023

Respectfully submitted,

/s/ *Gary J. Mennitt*
Gary J. Mennitt
Stephen D. Zide
David A. Herman
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
Facsimile: (212) 698-3599
gary.mennitt@dechert.com
stephen.zide@dechert.com
david.herman@dechert.com

*Counsel for Wilmington Savings Fund Society, FSB, solely in its capacity as trustee of the First Preferred Ship Mortgage Notes due 2022 issued by Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC*